UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOILISE L CROSSLEY, )<br>)<br>         Petitioner, )<br>)<br>         v. )<br>)<br>WARDEN Rockville Correctional Facility, )<br>)<br>         Respondent. ) | No. 2:19-cv-00305-JRS-MJD |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

The petition of Joilise Crossley for a writ of habeas corpus challenges a prison disciplinary proceeding identified as RTC 16-03-0099. For the reasons explained in this Entry, Ms. Crossley's habeas petition must be **denied**.

**A.   Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

### B. The Disciplinary Proceeding

On March 6, 2016, Officer Nicholas Gray wrote a conduct report in case RTC 16-03-0099 charging Ms. Crossley with offense A-117, assault on staff. The conduct report states:

> At app 3:52 pm on 3-6-16, I C/O Gray was attempting to close the door of Room A of Dorm 3. At this time Offender Crossley, Joilise 253228 pushed the door open and came at me in an agressive manner. By utilizing physical handling, I assisted Offender Crossley to the floor. Offender Crossley physically resisted my restraint on her, which resulted in Offender Crossley scratching my neck. Offender Crossley was placed in mechanical restraints and escorted to secure quarters with the assistance of C/O Livingston.

Dkt. 9-1 (errors in original).

Officer Livingston completed a supplemental report which stated:

> On 3/6/16 at approx. 3:51 pm I C/O Livingston #84 responded to a QRT in dorm 3 left. I observed Offender Crossley, Joilise DOC 253228 being combative with C/O N. Gray #127 in the application of mechanical restraints on the grate of room A.

Dkt. 9-2.

Officer Rex Thomas completed a supplemental report which stated:

> Offender Joilise Crossley, 253228 on 03/06/16 at approximately 3:51 PM, I c/o Rex E. Thomas witnessed Offender Joilise Crossley, 253228 assault c/o Nicholas Gray at the doorway of room A, Dorm 3 RCF. As c/o Gray was exiting the room, Offender Crossley charged the door, pushing through the door and grappling with c/o Gray as he attempted to contain her.

Dkt. 9-3 (errors in original).

On March 14, 2016, the screening officer notified Ms. Crossley of the charge of assault on staff and served her with a copy of the conduct report and a copy of the notice of disciplinary hearing "screening report." Ms. Crossley pleaded not guilty. Dkt. 9-4. Ms. Crossley requested Sgt. Cobb and MHP Russell as witnesses and a camera review of the incident as physical evidence. *Id.*

A written statement was acquired from Sgt. Cobb in lieu of appearing as a live witness at the hearing, which stated, "C/O N. Gray made the statement that he did not think she meant to

2

assault him. However the fact still remains that C/O N. Gray had scratches and red marks on his neck resulting from the incident." Dkt. 9-9.

Another written statement was acquired from MHP Russell in lieu of appearing as a live witness at the hearing, which stated, "Ms. Crossley has a mental health diagnosis that can intensify an individual's response to conflict. I have no way to know what Ms. Crossley's thoughts or feelings were at the time of the incident. She has demonstrated the ability to manage her emotions as evidenced by her behavior over the past two months. She is generally compliant with medication." Dkt. 9-10.

The hearing officer prepared a video review summary pursuant to Ms. Crossley's video evidence request. The video evidence review states:

> During the review of video evidence for this incident, Offender Crossley 253228 is observed running toward the doorway of Room A of Dorm 3 as Officer Gray is attempting to close the door. Crossley then approached Officer Gray in an aggressive manner. Crossley was assisted to the floor and physically resisted this process. This review does support the content of the conduct report for this incident.

Dkt. 9-8.

The hearing officer determined that allowing the offender to view the video recorded evidence would jeopardize the safety and/or security of the facility as set forth in Policy and Administrative Procedure 02-04-101, The Disciplinary Code for Adult Offenders. *Id.*; *see also* dkt. 9-19 at 29–30. The respondent reports that the video evidence is not included as an exhibit for this case because it no longer exists. Dkt. 9, n.1. This case originated from 2016, and the facility did not begin maintaining copies of security footage related to disciplinary cases until 2017. *Id.*

Several reports of use of physical force were also prepared in relation to this incident. Dkt. 9-11; 9-12; 9-13; 9-14; 9-15. Officer N. Gray's report stated:

3

> At 3:50 pm count I, Officer N. Gray, counted room A in dorm 3. I began to close the door to the room due to problems between Offender Crossley, Joilise DOC#253228, whom resides in room A and Offender Howard, Emily DOC#165347 whom was sitting in the dayroom. Offender Crossley started pushing the door open before I could close it. Offender Crossley got the door open and came at me in an aggressive manner so I reached with my left hand across Offender Crossley's back and grasped the left shoulder area of Offender Crossley. I then turned to the right and placed Offender Crossley on the floor. Offender Crossley continued to resist me on the ground until she got winded. I then stood Offender Crossley up in front of room A, against the cage and placed mechanical restraints on Offender Crossley's right wrist then the left. Sgt. K Cobb assisted me in escorting Offender Crossley to Restricted Housing.

Dkt. 9-11 (errors in original).

> Officer R. Thomas' report stated:
>
> As Officer Gray was securing room A in Dorm 3 I Officer R. Thomas, observed Offender Crossley, Joilise DOC#253228 barged through the door and begin to assault Officer N. Gray. After calling QRT to the housing unit, I attempted to pull Offender Crossley off of Officer N. Gray. Multiple times Offender Howard was ordered to stay back. I had to push Offender Howard back several times with my left hand open pushing her abdominal area way from us. When Officer N. Brueggeman and Lt. J. Medina responded they had taken control of the offender. Both offenders were placed in restraints and escorted to RH.

Dkt. 9-12 (errors in original).

> Lieutenant J. Medina's report stated:
>
> On 03-06-2016 I, Lt. J. Medina responded to a call via radio for QRT to respond to Dorm 3. When I responded, myself and Officer N. Brueggeman entered the Dorm and observed Officer R. Thomas and N. Gray attempting to physically restrain Offender Crossley, Joilise DOC#253228 and ward off Offender Howard, Emily DOC#165347 from interfering with Officers Gray and Thomas. Myself and Officer Brueggeman physically separated Offender Howard from Offender Crossley by pulling the two apart. When apart Offender Howard began to resist myself and Officer Brueggeman. Officer Brueggeman placed the offender on the ground and the offender refused to go to her stomach to be restrained. I grabbed the offenders left ankle with my right hand and her right ankle with my left hand and pulled them apart causing her to roll on to her stomach and placed her legs in a figure 4 crossing them. The offender was given multiple orders to place her hands behind her back. She refused, placing her hands under her. Officer N. Brueggeman then applied a 2-3 second application to the offenders right lower shoulder area. At this time she complied to restraints.

4

Dkt. 9-13 (errors in original).

>Officer C. Livingston's report stated:
>
>A QRT was called at approximately 3:51 pm. I C/O Livingston responded to dorm 3 left. Upon entering the dorm, I saw Lt. Medina and C/O Brueggeman pinning Offender Howard 165347 to the ground under the stairs of room A. I also saw C/O N. Gray attempting to cuff Offender Crossley 253228 outside of room A. I placed both hands on Crossley's upper left shoulder until C/O N. Gray had her restrained. At that time, Offender Crossley passively resisted by dropping to the ground and refusing to walk. With my right hand under her left arm and my left hand under her left knee, I lifted and carried her out to the foyer with the assistance of C/O N. Gray.

Dkt. 9-14.

>Officer N. Brueggeman's report stated:
>
>At approximately 3:52 p.m., a QRT was called to dorm 3 left. Upon arriving to the scene, I C/O Brueggeman witnessed C/O N. Gray engaged in physical handling with Offender Crossley, Joilise 253228. As C/O Gray was attempting to gain control of Offender Crossley, Offender Howard, Emily 164347 was grabbing Offender Crossley and attempting to get between Offender Crossley and C/O Gray. I then grasped Offender Howard by the shoulder and back of her shirt and placed her face down on the ground. I gave Offender Howard 3 orders to place her hands behind her back. Offender Howard did not comply and I applied an approximately 2 second application of the stun device to Offender Howard's upper right back. At this time, Offender Howard complied with the application of mechanical restraints, was assisted to her feet, and escorted to Restrictive Housing.

Dkt. 9-15.

The hearing officer held the hearing in case RTC 16-03-0099 on March 28, 2016. Dkt. 9-7. According to the hearing report, Ms. Crossley pleaded not guilty and stated, "When I came down here he said the walkie talkie scratched him. He went to close the door and I asked him not to lock it & I pushed the door and his keys were still in the door. The walkie talkie was still on the ground. They cuffed me & took me to lock." *Id.* (errors in original).

The hearing officer found Ms. Crossley guilty of offense A-117, assault on staff, based on staff reports and the video review. *Id.* Ms. Crossley received the following sanctions: 2 months of disciplinary segregation, a 90-day loss of good-time credit, and a suspended one-step demotion in

credit class. *Id.*

Ms. Crossley's appeals to the facility head and to the final reviewing authority were denied. Dkt. 9-16; dkt. 9-17. This habeas action followed.

Ms. Crossley attached two supplemental witness statements to her petition for habeas relief. The first purports to be from Correctional Officer Gray and states:

> On about 3/6/16 While doing my offender count, I attempted to lock room A[.] [O]ffender Crossley #253228 proceeded out. I tried to cuff her, she resisted at no time did she physically assulted or caused any bodily harm to my person c/o gray 4/1/16.

Dkt. 1-1 at 7 (errors in original).

The second purports to be from Offender Emily Howard and states:

> 10/18/2017
> I Emily Howard resisting to be cuffed but the altercation started w/ me at no time did I see or witness offender Crossley assault c/o Grey he stated that it was me who was out of control. Crossley is on PTSD meds & he I saw her just try to stand. c/o Grey also said that he was fine & Crossley only resisted.
> Emily Howard

Dkt. 1-1 at 8 (errors in original).

**C.     Analysis**

Ms. Crossley alleges that her due process rights were violated in the disciplinary proceeding. Her claims are that: 1) she was discriminated against on the basis of her race; 2) the hearing officer failed to take into account all circumstances and evidence; and 3) when the charge was increased from resisting to assault on staff there was insufficient evidence to support the charge. Dkt. 1.

The respondent first argues that Ms. Crossley's first two claims are barred by procedural default because she did not raise them on appeal. The Court finds that it will be more efficient to consider the merits of all the claims brought in the petition. *See Washington v. Boughton,* 884 F.3d

6

692, 698 (7th Cir. 2018) ("Rather than work our way through the maze of these procedural arguments, however, we think it best to cut to the chase and deny Washington's due process claim on the merits.").

Ms. Crossley's first claim is that she was discriminated against on the basis of her race, African American, and mental health disorder, PTSD, because the other offender, Caucasian with no mental disorder, involved in the same incident, Ms. Howard, was found guilty of a lesser charge, resisting/fleeing. Dkt. 1 at 2; dkt. 10 at 3. This claim is treated as an equal protection claim.

The Equal Protection clause directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). "[T]he Equal Protection Clause protects against intentional discrimination on the basis of race or national origin…." *De Lima Silva v. Dept. of Corrections,* 917 F.3d 546, 559 (7th Cir. 2019); *see also Lauderdale v. Ill. Dept. of Human Services,* 876 F.3d 904, 909-10 (7th Cir. 2017) ("The equal protection clause of the Fourteenth Amendment protects individuals against intentional, arbitrary discrimination by government officials.") (internal quotation omitted). Ms. Crossley alleges she was judged more harshly than a Caucasian inmate. She has presented no evidence, however, that the different offenses and sanctions were the result of intentional discrimination rather than other factors. This claim fails.

Ms. Crossley's next claim is that she is entitled to a fair hearing by an unbiased hearing officer. That is true. Inmates are entitled to an impartial decision-maker. A prison official who is "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof," may not adjudicate those charges. *Piggie v. Cotton,* 342 F.3d 660, 667 (7th Cir. 2003). "Adjudicators are entitled to a presumption of honesty and integrity." *Id.* at 666. "[T]he constitutional standard for impermissible bias is high." *Id.* In this case, there is no evidence

that the hearing officer was involved in the underlying events involved in this case. Ms. Crossley argues that the hearing officer failed to take into consideration her history of mental illness and that she has never been a violent offender. In fact, the hearing officer was aware of Ms. Crossley's mental health disorder. Dkt. 9-10. The circumstances she complains about do not rebut the strong presumption that the hearing officer was not biased. No due process violation occurred in this regard.

Ms. Crossley's final claim is that there was insufficient evidence to support the "assault on staff" charge. Dkt. 1 at 3. She argues that she should have been found guilty of "resisting" but not "assault on staff." She has presented a statement from the reporting officer, Officer Gray, dated April 1, 2016. It says, "On or about 3/6/16 while doing my offender count, I attempted to lock room A[.] Offender Crossley #253228 proceeded out. I tried to cuff her. She resisted at no time did she physically assulted [sic] or caused any bodily harm to my person. C/O Gray 4/1/16." Dkt. 1-1 at 7. She states in her petition that she did not receive Officer Gray's statement until after the hearing. Dkt. 1 at 3. She says her hearing was not postponed and the hearing officer told her that her case would be dropped if she appealed. *Id.*

The Court cannot consider evidence that was not considered by the hearing officer. The witnesses she requested, Sgt. Cobb and MHP Russell, provided statements. Sgt. Cobb acknowledged that Officer Gray said that he did not think Ms. Crossley meant to assault him, but Officer Gray still "had scratches and red marks on his neck resulting from the incident." Dkt. 9-9. It is true that a charge of resisting or another lesser offense *could* have been charged, but the Court has a limited scope of review and therefore may only determine whether the charge issued was supported by some evidence. There is "some" evidence consisting of the conduct report which states Ms. Crossley scratched Officer Gray's neck. Whether she intended to do so or not is not an

element of the offense.

A-117 "assault on staff" is defined as: "Committing battery/assault upon any staff person, including contractors and volunteers, which results in bodily injury or serious bodily injury (including the throwing of body fluids or waste on a staff person)." The term "bodily injury" is defined as "any injury or illness which causes a physical impairment, including physical pain." Dkt. 15-2 at 3.

The evidentiary standard for disciplinary habeas claims, some evidence, is very low. "The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (citation and quotation marks omitted); *see also Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016) ("a hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary."); *Donelson v. Pfister*, 811 F.3d 911, 916 (7th Cir. 2016) ("Under *Hill*, 'the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'") (quoting *Hill*, 472 U.S. at 455-56)). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). The conduct report "alone" can "provide[] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

In this case, the hearing officer considered the statements of the officers and the video evidence in determining that Ms. Crossley's conduct satisfied the definition of "assault on staff." Dkt. 9-7. There is no dispute that Officer Gray was a "staff person." As noted above, there is some evidence that when Ms. Crossley was aggressive and resisted, she scratched Officer Gray's neck. The hearing officer reasonably determined that Ms. Crossley assaulted the officer and caused a

9

physical impairment or pain. Mental health staff were consulted and Ms. Crossley's PTSD diagnosis was considered. Nonetheless, the low evidentiary threshold was met in this case.

Ms. Crossley was given proper notice and had an opportunity to defend the charge. The hearing officer provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt. Under these circumstances, there were no violations of Ms. Crossley's due process rights.

### D.     Conclusion

For the above reasons, Ms. Crossley is not entitled to the relief she seeks. Her petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this Entry shall now issue.

IT IS SO ORDERED.

Date:   10/9/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JOILISE L CROSSLEY
253228
Rockville Correctional Facility
811 W 50 N
Rockville, IN 47872

Katherine A. Cornelius
INDIANA ATTORNEY GENERAL
katherine.cornelius@atg.in.gov